IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MICHAEL ZIMMERMAN,

    Plaintiff,

v.

F/V LESLIE LEE, INC.,
an Oregon corporation,

    Defendant.

Case No. 6:13-cv-00048-AA
OPINION AND ORDER

---

Douglas R. Williams
Anderson Carey Alexander & Williams
1501 Eldridge Avenue
P.O. Box 1015
Bellingham, Washington 98225

Gordon T. Carey, Jr.
Attorney at Law
1020 S.W. Taylor Street, Suite 375
Portland, Oregon 97205
    Attorneys for plaintiff

Eric R. McVittie
Markus B.G. Oberg
LeGros Buchanan & Paul
701 Fifth Avenue, Suite 2500
Seattle, Washington 98104
    Attorneys for defendant

Page 1 - OPINION AND ORDER

AIKEN, Chief Judge:

Plaintiff Michael Zimmerman moves for the pretrial reinstatement of his maintenance and cure benefits, attorney fees, and punitive damages based on defendant F/V Leslie Lee Inc.'s refusal to provide ongoing payments. In addition, plaintiff moves to amend his complaint pursuant to Fed. R. Civ. P. 15. For the reasons set forth below, plaintiff's motion for reinstatement is granted in part and denied in part, and plaintiff's motion to amend is denied.

## BACKGROUND

In December 2012, defendant hired plaintiff to work as a deckhand on one of its fishing vessels. On February 8, 2012, plaintiff sustained a head injury after being struck by a steel crawl cable while attempting to remove a crab pot at the direction of Captain Lee Woodward. On February 9, 2012, within five hours of the incident, plaintiff received onshore medical treatment from Shawn Vainio, M.D., at Providence Kodiak Island Medical Center in Kodiak, Alaska. At that time, plaintiff reported head and neck pain, a fluttering sensation in his left eye, and one episode of vomiting.

Dr. Vainio diagnosed plaintiff with a closed-head injury and a stellate laceration, which required ten staples and sutures to close. Nonetheless, because plaintiff's "physical examination [was] otherwise normal with minimal symptoms," Dr. Vainio determined that plaintiff could return to the vessel, but instructed him to seek additional treatment in the event of

worsening neurological symptoms. Williams Decl. Ex. 2, at 1-2. Consistent with Dr. Vainio's assessment, plaintiff returned to defendant's ship for one more fishing trip.[1] Defendant began paying maintenance and cure upon plaintiff's departure from its vessel.

On March 7, 2012, plaintiff sought treatment from David M. Bice, M.D., for worsening neurological symptoms. In recounting how he was injured, plaintiff asserted for the first time that he "faded out" after being hit on the head. Williams Decl. Ex. 3. In addition, plaintiff reported persistent headaches, visual disturbance, vertigo, mood lability, and tinnitus. Thereafter, plaintiff continued to suffer some iteration of these symptoms to varying degrees and received treatment once a month from Dr. Bice, who ultimately diagnosed plaintiff with postconcussion syndrome.

Upon Dr. Bice's referral, plaintiff also began specialty treatment for his neurological symptoms. On October 1, 2012, plaintiff underwent an evaluation with neurologist Gerald Riess, M.D., who, like Dr. Bice, found that plaintiff's "symptoms are most consistent with postconcussion syndrome." Id. at Ex. 10, at 3.

---

[1] The parties dispute the rationale behind plaintiff's departure from defendant's vessel. Plaintiff asserts that he left because "he could not safely perform his work due to worsening neurological symptoms, including frequent falling, dizziness, and confusion [arising from] his injury." Pl.'s Mot. for Reinstatement & Cure 3. Defendant contends that plaintiff "quit because he did not like fishing [and] made no mention of his injury, any health issue or a need for medical treatment . . . stat[ing] [instead that] the job was 'just not what I thought it was' and 'it's not for me.'" Def.'s Resp. to Mot. for Reinstatement & Cure 5 (quoting Woodward Decl. ¶ 3); see also Williams Decl. Ex. 11.

Page 3 - OPINION AND ORDER

Dr. Riess instructed plaintiff to return for further evaluation.

On November 1, 2012, plaintiff was assessed by neuropsychologist Julien Guillaumont, Ph.D. Pursuant to this evaluation, Dr. Guillaumont administered a plethora of neurological tests, which were all normal, except plaintiff's processing speed, verbal fluency, and freedom from interference. While Dr. Guillaumont opined that plaintiff suffered from postconcussion syndrome, he also reported that depressive elements could have contributed to plaintiff's test results and symptoms. Dr. Guillaumont concluded that plaintiff would continue to improve and was "capable of functioning well enough to complete most jobs for which he was premorbidly qualified." Id. at Ex. 11, at 10. Accordingly, Dr. Guillaumont completed a "Worker's and Physician's Report for Workers Compensation Claims" form, wherein he indicated that plaintiff's head injury was not permanent and that he could return to "[r]egular work . . . immediately." Oberg Decl. Ex. 2. He nonetheless recommended that plaintiff continue treatment with Dr. Riess.

On November 8, 2012, plaintiff returned to Dr. Riess, who interpreted Dr. Guillaumont's findings and reiterated his diagnosis of postconcussion syndrome, noting that it "may take [plaintiff] up to 18 months to reach" maximum medical improvement ("MMI"). Id. at Ex. 12, at 2. Plaintiff continued to receive treatment from Dr. Riess every four to six weeks. Plaintiff also regularly attended physical therapy sessions to treat his symptoms and cervical strain.

Page 4 - OPINION AND ORDER

On January 10, 2013, plaintiff filed a complaint in this Court, alleging claims for negligence, unseaworthiness, and maintenance and cure. On February 4, 2013, defendant hired its own medical expert, Lawrence Murphy, M.D., to provide an opinion regarding plaintiff's complaints and symptoms, their etiology, the need for further curative treatment, and whether plaintiff had reached MMI. Dr. Murphy reviewed plaintiff's medical records and concluded that, more probably than not, plaintiff had reached MMI "no later than November 1, 2012 (the date of his normal neurocognitive assessment)." Id. at Ex. 17, at 13. In an addendum to his initial report, and in response to arguments raised by plaintiff's counsel, Dr. Murphy opined that plaintiff "(more probably than not) did not suffer a concussive event, and any concussion would have been of a minor, and brief, nature." Id. at Ex. 20, at 5-6. On March 1, 2013, defendant terminated plaintiff's maintenance and cure benefits.

On May 3, 2013, plaintiff filed a pretrial motion for reinstatement of maintenance and cure. On May 7, 2013, plaintiff filed a motion to amend his complaint. On May 31, 2013, in support of his reply brief, plaintiff filed the declaration of Dr. Riess, in which Dr. Riess stated explicitly that plaintiff had not reached MMI for his February 2012 injury. On June 14, 2013, with leave from the Court, defendant filed a surreply, as well as a supplemental declaration from Dr. Murphy, in response to Dr. Riess's declaration.

## DISCUSSION

The resolution of this dispute hinges on the applicable standard of review governing pretrial motions for reinstatement of maintenance and cure, brought under general maritime law, where there is conflicting medical evidence relating to whether or when the seaman reached MMI.[2]

---

[2] In its surreply, defendant attempts to rephrase the issue before the Court: "Zimmerman would have the Court believe that the primary issue before it is whether he is at [MMI but the] primary issue, however, is that Zimmerman's ongoing medical treatment is unrelated to his shipboard employment and February 8, 2012 accident." Def.'s Surreply to Mot. Reinstatement & Cure 1-2. In other words, defendant contends, for the first time in its surreply, that plaintiff never had a preliminary right to maintenance and cure. Compare Def.'s Resp. to Mot. Reinstatement & Cure 2, 11-13 ("at issue here is whether Zimmerman is entitled to additional maintenance and cure after February 29, 2013" because "Dr. Murphy has opined on a more probable than not basis that Zimmerman reached MMI by November 1, 2012") (emphasis in original), with Def.'s Surreply to Mot. Reinstatement & Cure 1-5 ("Zimmerman's post-concussive syndrome is unrelated to the February 2012 incident" such that there is "a genuine issue of material fact as to [his] entitlement to maintenance and cure"). It is undisputed that a "seaman's initial entitlement to maintenance and cure presents legal questions that can properly be resolved on summary judgment." Dean v. Fishing Co. of Ala., Inc., -- Wash.2d --, 300 P.3d 815, 822 (2013). Here, however, "[t]here is no dispute that Zimmerman sustained a head injury aboard the F/V LESLIE LEE on or about February 8, 2012." Def.'s Resp. to Mot. Reinstatement & Cure 4. As such, defendant paid such benefits for approximately one year on the basis of Dr. Riess's and Dr. Bice's reports that plaintiff's postconcussion syndrome was the result of his February 2012 head injury. See Def.'s Resp. to Mot. Reinstatement & Cure 2-13; Riess Decl. ¶¶ 1-2. Further, defendant did not file a cross-motion challenging plaintiff's initial entitlement to these benefits or raise this issue prior to its surreply. See LR 7-1(b) ("[m]otions may not be combined with any response, reply, or other pleading"); United States v. Gianelli, 543 F.3d 1178, 1184 n.6 (9th Cir. 2008), cert. denied, 555 U.S. 1175 (2009) ("arguments raised for the first time in a reply brief are generally considered waived") (citation omitted). Accordingly, because defendant failed to properly raise this issue, the Court declines to rule on it, especially in light of the fact that plaintiff has not been afforded an opportunity to respond.

Page 6 - OPINION AND ORDER

I.  Motion for Reinstatement of Maintenance and Cure

Plaintiff argues that the "'Vaughan Standard' [controls] this Motion for Reinstatement of Maintenance and Cure," thereby entitling him to the requested remedy based on Dr. Riess's opinion that he has not attained MMI. Pl.'s Mot. for Reinstatement & Cure 7 (citing Vaughan v. Atkinson, 369 U.S. 527, 532 (1962)). Conversely, defendant asserts that the general summary judgment standard applies and, because Dr. Murphy's report creates a genuine issue of material fact regarding whether plaintiff reached MMI, plaintiff's motion should be denied.

Although the Supreme Court has cautioned against "exceptions or conditions [that would] stir contentions, cause delays, and invite litigations" over maintenance and cure, it has never articulated the standard under which courts should review pretrial motions seeking maintenance and cure. Vella v. Ford Motor Co., 421 U.S. 1, 4 (1975) (citations and internal quotations omitted). Further, the Ninth Circuit has only reviewed a pretrial motion for maintenance and cure where the parties disputed the seaman's initial entitlement to such benefits. See Glynn v. Roy Al Boat Mgmt. Corp., 57 F.3d 1495, 1505-06 (9th Cir. 1995), abrogated on other grounds, Atl. Sounding Co., Inc. v. Townsend, 557 U.S. 404 (2009). As such, it is undisputed that neither the Supreme Court, the Ninth Circuit, nor the District of Oregon have addressed the issue presented here.

Under general maritime law a shipowner has a duty to provide maintenance and cure to a seaman who "becomes ill or is injured

Page 7 - OPINION AND ORDER

while in the service of the ship." <u>Vella</u>, 421 U.S. at 3; <u>Aguilera v. Ala. Juris F/V, O.N. 569276</u>, 535 F.3d 1007, 1009 (9th Cir. 2008). "Maintenance" is a per diem living allowance; "cure" refers to the payment of medical expenses incurred in treating the seaman's injury or illness. <u>Calmar S.S. Corp. v. Taylor</u>, 303 U.S. 525, 528 (1938); <u>Day v. Am. Seafoods Co. LLC</u>, 557 F.3d 1056, 1058 n.1 (9th Cir. 2009). "The shipowner's duty to pay maintenance and cure continues until the seaman reaches [MMI]." <u>Dean</u>, 300 P.3d at 819 (citations and internal quotations omitted). MMI is achieved "when the seaman recovers from the injury, the condition permanently stabilizes or cannot be improved further." <u>Id.</u> (citation omitted).

A shipowner's duty to pay maintenance and cure is broad and liberally interpreted "for the benefit and protection of seamen." <u>Vaughan</u>, 369 U.S. at 531-32 (citation and internal quotations omitted); <u>Vella</u>, 421 U.S. at 4 (citation omitted). As a result, a shipowner is required to provide such benefits regardless of fault.[3] See <u>Aguilar v. Standard Oil Co. of N.J.</u>, 318 U.S. 724, 730-31 (1943). In other words, "the shipowner's liability for maintenance and cure [is] among the most pervasive of all and [is] not to be defeated by restrictive distinctions nor narrowly confined." <u>Vaughan</u>, 369 U.S. at 532 (citation and internal quotations omitted). Accordingly, to ensure that injured seamen are protected, "ambiguities or doubts [related to maintenance and

---

[3] While there are defenses a shipowner can raise to avoid paying maintenance and cure, defendant does not argue that any of these defenses apply here.

Page 8 - OPINION AND ORDER

cure] are resolved in favor of the seaman." Id. (citation omitted).

Here, the Court finds that application of the summary judgment standard would be incompatible with the principles espoused in Vaughan. As defendant notes, a split of authority exists within the Ninth Circuit regarding the standard of review. Compare Mabrey v. Wizard Fisheries, Inc., 2007 WL 1556529, *2-3 (W.D.Wash. May 24, 2007) (noting that "[t]he state of the law in this area is far from clear and often contradictory" before adopting the summary judgment standard and denying the plaintiff's motion to compel maintenance and cure where there were conflicting medical opinions), with Gouma v. Trident Seafoods, Inc., 2008 WL 2020442, *2-3 (W.D.Wash. Jan. 11, 2008) (declining to apply the summary judgment standard, and granting the plaintiff's motion for pretrial reinstatement of maintenance and cure, where the plaintiff established an initial entitlement to such benefits and the medical record was ambiguous); see also Def.'s Resp. to Mot. Reinstatement & Cure 11-12.[4]

The Court finds Gouma's reasoning persuasive. Specifically, Gouma explained that, even if the summary judgment standard applied,

> disputed questions of material fact (e.g., the differing opinions of Plaintiff's and Defendants' physicians) would

---

[4] The Court notes, however, that the majority of the cases that defendant relies on are both factually distinguishable and involved challenges to a seaman's initial entitlement to maintenance and cure, as opposed to a seaman's right to the reinstatement of those benefits once granted. See, e.g., Guerra v. Arctic Storm, Inc., 2004 WL 3007097, *2 (W.D.Wash. Aug. 4, 2004); Bloom v. Weeks Marine, Inc., 225 F.Supp.2d 1334, 1335-37 (M.D.Fla. 2002).

Page 9 - OPINION AND ORDER

>     simply mean that Plaintiff would be entitled to continue
>     to receive maintenance and cure until the matter was
>     ultimately resolved at trial. The procedural model
>     proposed by Defendants would mean that a vessel owner
>     could escape maintenance and cure obligations at any time
>     prior to trial simply by finding a physician who would
>     pronounce the seaman at [MMI, which would be a departure]
>     from the [Vaughan] standard of resolving all doubts
>     concerning maintenance and cure in the seaman's favor .
>     . . Similarly, Defendants may not unilaterally decide,
>     based on the opinion of their own physician, that a
>     seaman has reached [MMI because] it violates the summary
>     judgment standard which they themselves are championing
>     — in the face of genuine disputes of material fact
>     regarding the extent of Plaintiff's cure, Defendants are
>     not entitled to summarily (and unilaterally) determine
>     the question in their own favor. More significantly,
>     Defendants' action appropriates to themselves the
>     adjudicatory function of this Court — the issue of [MMI]
>     is one of the ultimate issues before the Court in any
>     maritime injury litigation, and no action may be taken on
>     it without an order of the court.

Gouma, 2008 WL 2020442 at *2-3; see also Sefcik v. Ocean Pride Ala., Inc., 844 F.Supp. 1372, 1373-74 (D.Ala. 1993) (declining to apply the summary judgment standard under analogous circumstances); Dean, 300 P.3d at 821-24 (same); Connors v. Iqueque U.S., LLC, 2005 WL 2206922, *2-3 (W.D.Wash. Aug. 25), recons. denied, 2005 WL 2237593 (W.D.Wash. Sept. 13, 2005) ("[t]he court is persuaded that the Supreme Court's instructions to construe claims for maintenance and cure liberally in favor of seamen counsel against applying the rigid standards of Rule 56 to a pretrial motion to compel maintenance and cure").

In sum, evaluating a motion for reinstatement of maintenance and cure under the summary judgment standard would contravene bedrock principles of maritime law; under that standard, a shipowner's evidence would automatically and categorically result in termination of the very benefits the seaman previously

Page 10 - OPINION AND ORDER

demonstrated his entitlement to. Compare Vaughan, 369 U.S. at 532, with Celotex Corp. v. Catrett, 477 U.S. at 322-24 (1986). The Court acknowledges the tension between a seaman's claim to maintenance and cure and a shipowner's concern that, if it ultimately proves that the seaman is not entitled to such benefits, it may be left with little opportunity to recover these payments; nonetheless, this tension must be resolved in favor of the seaman. Accordingly, consistent with Gouma, Sefcik, and Dean, the Court finds that, where a seaman makes a pretrial motion for reinstatement of maintenance and cure, the shipowner is required to reinstate such payments unless he or she provides "unequivocal evidence that the seaman has reached [MMI]." Dean, 300 P.3d at 821 (citations and internal quotations omitted).

Defendant does not and cannot argue that it fulfilled this burden. See generally Def.'s Resp. to Mot. Reinstatement & Cure; Def.'s Surreply to Mot. Reinstatement & Cure. Rather, because Dr. Murphy's opinion is directly at odds with Dr. Riess's, defendant's evidence is ambiguous. Compare Williams Decl. Ex. 17, at 16 (Dr. Murphy opining that "[r]elative to the 2012 incident, more probably that not Mr. Zimmerman is at [MMI] and is fixed and stable"), with Riess Decl. ¶¶ 1-2 (Dr. Riess opining that "Zimmerman has not reached [MMI] for his post-concussion syndrome and migraine headaches . . . suffered as a result of the accident aboard a fishing vessel on or about February 8, 2012"). Therefore, plaintiff's motion is granted as to maintenance and cure.

A.  Attorney Fees

Attorney fees are recoverable "only when the failure to provide maintenance and cure was arbitrary, recalcitrant or unreasonable." Kopczynski v. The Jacqueline, 742 F.2d 555, 559 (9th Cir. 1984), cert. denied, 471 U.S. 1136 (1985) (citations omitted); see also Vaughan, 369 U.S. at 530-31. Thus, the award of attorney fees is inappropriate where, as here, the shipowner relies upon expert medical evidence in deciding whether to make additional maintenance and cure payments. See, e.g., Gouma, 2008 WL 2020442 at *3; Mabrey, 2007 WL 1556529 at *3; Connors, 2005 WL 2206922 at *3; see also Boyden v. Am. Seafoods Co., 2000 WL 33179294, *2 (W.D.Wash. Mar. 21, 2000) (granting attorney fees where the shipowner "was in possession of medical records that indicated [the seaman's] treatment was ongoing and curative," and neglected to "acquire a medical opinion about [the seaman's] status before terminating benefits").

Furthermore, plaintiff failed to submit any documentation regarding his attorney fees. See Williams Decl. ¶ 9 (plaintiff's counsel requesting compensation for 18 hours of legal services, at an hourly rate of $250, but without providing an itemized billing statement or otherwise specifying his qualifications); see also LR 54-3; Mfrs. & Traders Trust Co. v. Fidelity Nat'l Title Ins. Co., 2012 WL 5462887, *6 n.7 (D.Or. Nov. 4, 2012). For these reasons, plaintiff's motion is denied in this regard.

B.  Punitive Damages

Punitive damages are available "for the willful and wanton

Page 12 - OPINION AND ORDER

disregard of the maintenance and cure obligation." Atl. Sounding Co., 557 U.S. at 424. "Denial of maintenance and cure based on a [reasonable defense or] colorable legal theory does not reflect a wanton and willful disregard of the seaman's rights." Rose v. Miss Pac., LLC, 2012 WL 75028, *8 (D.Or. Jan. 10, 2012) (citations omitted); see also Williams v. Wilmington Trust Co., 345 F.3d 128, 132 (2d Cir. 2003) (an employer may be exempt from penalties, if "the employer deliberately relies on a reasonable, but ultimately wrong, legal argument to withhold payment"). Here, in light of the considerable confusion regarding the governing standard for evaluating pretrial reinstatement of maintenance and cure claims, and because defendant relied on the reports of Drs. Guillaumont and Murphy pursuant to its decision to terminate benefits, the requisite willful and wanton misconduct is absent. See Oberg Decl. Ex. 2; Williams Decl. Exs. 17-20; see also Rose, 2012 WL 75028 at *8; Great Lakes Dredge & Dock Co. v. Martin, 2012 WL 3158870, *3-4 (E.D.La. Aug. 3, 2012). In other words, due to discrepancies in the medical record and the fact that defendant repeatedly solicited additional evidence from plaintiff before terminating benefits, evidence which plaintiff failed to provide until after filing this lawsuit, the Court cannot conclude that defendant acted unreasonably. Accordingly, plaintiff's motion is denied as to this issue.

II. Motion to Amend

Plaintiff also requests leave to amend his complaint in order to add a claim for punitive damages arising out of defendant's

Page 13 - OPINION AND ORDER

allegedly wrongful termination of his maintenance and cure. Because there is no evidence in the record indicating that defendant discontinued plaintiff's benefits in bad faith, the proposed amendments would be futile. See Forsyth v. Humana, Inc., 114 F.3d 1467, 1482 (9th Cir. 1997) (outlining the four factors to be considered in determining whether a motion to amend should be granted); Ahlmeyer v. Nev. Sys. of Higher Educ., 555 F.3d 1051, 1055 (9th Cir. 2009) ("futility of amendment alone can justify the denial of a motion"). Therefore, for the reasons discussed above, plaintiff's motion to amend is denied.

## CONCLUSION

Plaintiff's motion for reinstatement of maintenance and cure (doc. 11) is DENIED as to attorney fees and punitive damages, and GRANTED in all other respects. Plaintiff's motion to file an amended complaint (doc. 13) is DENIED. Finally, defendant's request for oral argument is DENIED as unnecessary.

IT IS SO ORDERED.
Dated this 2nd of July 2013.

_____
Ann Aiken
United States District Judge

Page 14 - OPINION AND ORDER