IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| MICHAEL ZIMMERMAN,<br><br>    Plaintiff,<br><br>    v.<br><br>F/V LESLIE LEE, INC., an Oregon corporation,<br><br>    Defendant. | Civ. No. 6:13-cv-00048-MC<br><br>OPINION AND ORDER |

**MCSHANE, Judge**:

On February 8, 2012, Plaintiff Michael Zimmerman suffered a cranial injury while working aboard a fishing vessel owned by Defendant Leslie Lee, Inc. ("Leslie Lee"). In January 2013, Zimmerman brought claims of negligence, unseaworthiness, maintenance and cure, and unearned wages against Leslie Lee pursuant to the provisions of 28 U.S.C. § 1916 and under the Jones Act, 46 U.S.C. § 30104.

Leslie Lee now moves for partial summary judgment on Zimmerman's claim for maintenance and cure. Leslie Lee argues that there is no genuine issue of material fact as to: (1) whether the conditions from which Zimmerman currently suffers are related to the injury he sustained while working aboard Leslie Lee's fishing vessel; and (2) whether Zimmerman has been treated to the point of maximum medical improvement (MMI). Because the medical evidence of record creates genuine issues of material fact as to both issues presented, Leslie Lee's motion for summary judgment, ECF No. 53, is DENIED.

1 – OPINION AND ORDER

## PROCEDURAL AND FACTUAL BACKGROUND

This action arises out of an injury that occurred on a fishing vessel owned by Leslie Lee ("the F/V Leslie Lee"). In December 2011, Zimmerman was hired to work as a deckhand aboard the F/V Leslie Lee. On February 8, 2012, Zimmerman sustained a head injury after being struck by a steel crawl cable while attempting to remove a crab pot at the direction of Captain Lee Woodward. On February 9, 2012, within five hours of the incident, Zimmerman received onshore medical treatment from Shawn Vainio, M.D., at Providence Kodiak Island Medical Center in Kodiak, Alaska. At that time, Zimmerman reported head and neck pain, a fluttering sensation in his left eye, and one episode of vomiting.

Dr. Vainio diagnosed Zimmerman with a closed-head injury and a stellate laceration, which required ten staples and sutures to close. Because Zimmerman's "physical examination [was] otherwise normal with minimal symptoms," Dr. Vainio determined that Zimmerman could return to the vessel, but instructed him to seek additional treatment in the event of worsening neurological symptoms. Consistent with Dr. Vainio's assessment, Zimmerman returned to the F/V Leslie Lee for one more fishing trip before returning home to Oregon. Leslie Lee began paying maintenance and cure shortly thereafter.

Upon Zimmerman's return to Oregon the following month, he sought treatment from his primary care physician, David Bice, M.D., who had treated Zimmerman for a number of years prior to the incident aboard the Leslie Lee.[1] Dr. Bice treated Zimmerman three times throughout the months following the incident. On April 23, 2012, Dr. Bice diagnosed Zimmerman with post-concussive syndrome. Decl. of Oberg, Ex. 7, ECF No. 58-7. Dr. Bice also referred Zimmerman

---

[1] It is undisputed that Zimmerman had long suffered from occasional migraine headaches prior to sustaining the head injury at the heart of this case. Decl. of Dr. Bice, ¶ 3, ECF No. 65. Dr. Bice treated Zimmerman for these migraines and placed him on medication to treat them as well as associated vertigo and vision loss. *Id.* Dr. Bice attests to the fact that Zimmerman's migraines were decreasing in frequency in the years preceding the injury. *Id.*

2 – OPINION AND ORDER

to a number of specialists, including a neurologist named Gerald Riess, M.D., who later confirmed Dr. Bice's diagnosis. Decl. of Oberg, Ex. 11, ECF No. 58-11. Dr. Riess then referred Zimmerman to a neuropsychologist named Julien Guillaumot, Ph.D. Dr. Guillamot conducted an array of diagnostic tests and concluded that Zimmerman had various cognitive disorders with mild, slowly-improving, post-concussive syndrome. Decl. of Oberg, Ex. 13 at 12, ECF No. 58-13. Dr. Guillamot also noted significant depressive elements in addition to his diagnosis of post-concussive syndrome. *Id.* at 10.

On November 8, 2012, Dr. Riess again treated Zimmerman and noted Zimmerman's difficulties with memory, frustration with his inability to maintain conversations, and fatigue. Decl. of Oberg, Ex. 14, ECF No. 58-14. Dr. Riess noted that Dr. Guillamot's neuropsychological testing were consistent with the cognitive defects associated with Zimmerman's post-concussive syndrome. *Id.* Dr. Riess opined that Zimmerman could take up to 18 months from that date, approximately May 2014, to reach MMI.

On January 10, 2013, Zimmerman filed a complaint in this Court, alleging claims for negligence, unseaworthiness, maintenance and cure, and unearned wages.

On February 4, 2013, Lawrence Murphy, M.D., provided his medical opinion based upon his review of Zimmerman's medical records. Dr. Murphy was retained by defense counsel to provide this review and to specifically opine on issues relevant to this action, including Zimmerman's subjective health complaints, his prognosis, the need for further curative treatment, and whether Zimmerman had attained MMI. Decl. of Dr. Murphy, ¶¶ 1, 4, ECF No. 54. Dr. Murphy concludes that Zimmerman was "more probably than not" at MMI at that time. Dr. Murphy emphasizes Zimmerman's pre-existing migraines and discussed the fact that Zimmerman's treating physician and neurologist never specifically tied the causation of

3 – OPINION AND ORDER

Zimmerman's post-concussive syndrome in early 2012 to the cranial injury he sustained aboard the F/V Leslie Lee. Supp. Decl. of Dr. Murphy, ECF No. 55. Dr. Murphy opined that Zimmerman is capable of performing all activities of daily living on a reasonably continuous basis without restriction. Decl. of Dr. Murphy, Ex. B at 15–16, ECF No. 54-2. Dr. Murphy believes that Zimmerman can likely return to fishing at some point. *Id.* at 17.

On July 2, 2013, this Court reinstated plaintiff's maintenance and cure pending resolution of this action.

Following the reinstatement, Zimmerman continued to seek treatment with Dr. Bice until Dr. Bice's retirement in 2014. Zimmerman also treated with an occupational doctor, Gregory Steinke, M.D., and a physical therapist named Robert Long. Both diagnosed Zimmerman with post-concussive syndrome. Decl. of Oberg, Exs. 18, 36, ECF No. 54-18, 54-36.

In April 2015, Zimmerman began treatment with Miguel Estevez, M.D., Ph.D., a board certified neurologist with a subspecialty in concussions and traumatic brain injuries. Dr. Estevez diagnosed Zimmerman with post traumatic headaches, post-concussive syndrome, cervicalgia (pain in the neck), and insomnia resulting from a traumatic brain injury. Decl. of Estevez, ¶ 4, ECF No. 66. In a declaration provided in support of Zimmerman's response to Leslie Lee's motion, Dr. Estevez estimates that Zimmerman is "at 40-50% of his pre-accident abilities," particularly physical and cognitive function. *Id.* ¶ 6. Dr. Estevez estimates that Zimmerman can improve with continued treatment. *Id.*

On August 27, 2015, Leslie Lee filed the instant motion for partial summary judgment, ECF No. 53. Zimmerman filed his response, ECF No. 63, after this court granted a timely filed

4 – OPINION AND ORDER

motion for extension of time, ECF No. 62. Leslie Lee filed its reply, ECF No. 69, on October 13, 2015. Zimmerman filed a surreply, ECF No. 71, on October 23, 2015.[2]

## STANDARD OF REVIEW

This Court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). An issue is "genuine" if a reasonable jury could return a verdict in favor of the non-moving party. *Rivera v. Phillip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is "material" if it could affect the outcome of the case. *Id.* The court reviews evidence and draws inferences in the light most favorable to the non-moving party. *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 988 (9th Cir. 2006) (quoting *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999)). When the moving party has met its burden, the non-moving party must present "specific facts showing that there is a *genuine issue for trial.*" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (quoting Fed. R. Civ. P. 56(e)) (emphasis in original).

## DISCUSSION

Leslie Lee contends that Zimmerman's maintenance and cure benefits should be limited to the treatment he received on February 8, 2012, the day of the incident aboard the F/V Leslie Lee. In the alternative, Leslie Lee argues that Zimmerman's entitlement to maintenance and cure benefits is exhausted because he is at maximum medical improvement ("MMI").[3] *See* Def.'s

---

[2] Zimmerman failed to obtain leave of court to file his surreply. Neither Fed. R. Civ. P. 7 nor the local rules provide for the filing of a surreply, and surreplies are not authorized absent express prior leave of court. However, "[w]hen a party has raised new arguments . . . in a reply to an opposition, the court may permit the other party to counter the new arguments or evidence." *Jordan v. Terhune*, 2009 WL 276764, at *3 (E.D. Cal. Feb. 5, 2009) (citing *El Pollo Loco, Inc. v. Hashim,* 316 F.3d 1032, 1040–41 (9th Cir. 2003). Zimmerman's surreply is permitted under this principle.

[3] Courts in maintenance and cure cases use "maximum medical recovery," "maximum care," and "maximum medical improvement" interchangeably. For clarity, the latter term will be used throughout this opinion.

5 – OPINION AND ORDER

Mot. Summ. J. 1–2, ECF No. 53. Leslie Lee moves for partial summary judgment on these grounds.

I.     **Maintenance and Cure**

"Maintenance and cure is designed to provide a seaman with food and lodging when he becomes sick or injured in the ship's service . . . ." *Vaughan v. Atkinson*, 369 U.S. 527, 531 (1962). A shipowner's obligation to provide such maintenance and cure derives from the unique hazards inherent in the work of seamen and is designed to encourage marine commerce. *Vella v. Ford Motor Co.*, 421 U.S. 1, 5 (1975).

State courts deciding similar maritime cases have held that the summary disposition of maintenance and cure claims is generally not appropriate because the extent of a seaman's injuries and whether a seaman has reached MMI are factual rather than legal questions. *See Dean v. Fishing Co. of Alaska, Inc.*, 300 P.3d 815, 821 (Wash. 2013) (en banc), *citing* ROBERT FORCE & MARTIN J. NORRIS, THE LAW OF SEAMAN, § 26:43, 26–101 (5th ed. 2003), THOMAS J. SCHOENBAUM, ADMIRALTY AND MARITIME LAW, § 6–28, 393 (4th ed. 2004). In reversing and remanding a district court's grant of summary judgment in a very similar maritime case involving a plaintiff's cranial injury allegedly linked to a shipboard assault, the Fifth Circuit acknowledged testimony of doctors diagnosing post-concussive syndrome and found:

> Whether this post concussion syndrome was proximately caused by the assault or by a subsequent injury to his head while working in a shipyard some months later, and if the latter, whether that was attributable to the earlier injury, was itself a medical question of fact.

*Murphy v. Light*, 257 F.2d 323, 326 (5th Cir. 1958). That court opted to "intimate nothing on the merits of this medico-legal controversy," but concluded that "these matters were in dispute and the Judge in summary judgment could not resolve them." *Id.* at 326.

6 – OPINION AND ORDER

Leslie Lee contends that Zimmerman's entitlement to maintenance and cure is limited to the treatment he received for his laceration on February 9, 2012, the day of the incident. *See* Def.'s Mot. Summ. J. 19–24, ECF No. 53. Leslie Lee's argument relies on Dr. Vainio's treatment notes dated February 9, 2012, *see* Decl. of Oberg 2–3, ECF No. 58-5; Dr. Murphy's opinion that Zimmerman's injury was limited and that he is at MMI, *see, e.g.*, Decl. of Murphy, 3–17, ECF No. 54-2; Dr. Guillamot's opinion that Zimmerman's symptoms are at least based in part on depressive disorder, *see, e.g.*, Decl of Oberg, Ex. 38, p. 9, ECF No. 58-38; and Zimmerman's pre-existing headache and migraine conditions, *see, e.g.*, Supplemental Decl. of Murphy, 3–4, ECF No. 55.

To establish a disputed issue of fact, Zimmerman proffers the statements and treatment notes of six different treating physicians and specialists, including: David Bice, M.D., Gerald T. Riess, M.D., Miguel Estevez, M.D., Ph.D, Victor Lin, M.D., Gregory L. Steinke, M.D., and Shelly Svodboda, M.D. All six of these doctors have treated and diagnosed Zimmerman's traumatic brain injury and post-concussive syndrome at various times since his cranial injury aboard the F/V Leslie Lee. Decl. of Oberg, Ex. 7, ECF No. 58-7 (Dr. Bice's diagnosis); Decl. of Bice ¶ 5, ECF No. 65 (same); Decl. of Oberg Ex. 11, ECF No. 58-11 (Dr. Riess's diagnosis); Decl. of Oberg, Ex. 28, pp. 1, 5, ECF No. 58-28 (Dr. Steinke's diagnosis); Decl. of Oberg Ex. 30, ECF No. 58-30 (Dr. Long's diagnosis); Decl. of Oberg, Exs. 21, 41, ECF No. 58-21, 58-41 (Dr. Svoboda's diagnosis); Decl. of Estevez, ¶ 3, ECF No. 66.

Whether there exists a genuine issue of material fact as to whether Zimmerman is entitled to maintenance and cure beyond that which he received on February 8, 2012, is not a close question. I recognize that Leslie Lee raises a host of factual arguments that Zimmerman's "constellation of symptoms" are unrelated to the shipboard injury he sustained. The instant

7 – OPINION AND ORDER

motion, however, collapses under the weight of the medical opinions to the contrary; nearly all of which clearly diagnose ongoing symptoms of post-concussive syndrome related to a traumatic cranial injury. Zimmerman undisputedly suffered such an injury while working aboard the F/V Leslie Lee. These facts favor the non-moving party and summary judgment would be inappropriate. For these reasons, Leslie Lee's motion fails as it applies to limiting Zimmerman's entitlement to maintenance and cure to the day of his injury.

## II. Maximum Medical Improvement

Maintenance and cure continues during a seaman's incapacity until the seaman reaches MMI. *See Vella v. Ford Motor Co.*, 421 U.S. at 1; *Vaughan*, 369 U.S. at 531; *Farrell v. United States*, 336 U.S. 511, 518 (1948). MMI is reached "when the seaman recovers from the injury, the condition permanently stabilizes or cannot be improved further." *Dean v. Fishing Co. of Alaska, Inc.*, 300 P.3d at 819 (citation and internal quotation marks omitted). Any ambiguities as to whether MMI has been reached are to be resolved in the seaman's favor. *Sefcik v Ocean Pride Alaska, Inc.*, 844 F. Supp. 1372, 1374 (D. Alaska 1993); *Kratzer v. Capital Marine Supply, Inc.*, 490 F. Supp. 222 (M.D. La. 1980), *affirmed* 645 F.2d 477 (5th Cir. 1981).

Leslie Lee argues: "In this case, there can be no doubt that Plaintiff's conditions have permanently stabilized—he is at MMI." Def.'s Mot. Summ. J. 21, ECF No. 53. I disagree. Doubt about MMI is present even in the statements of Zimmerman's treating doctors peppered throughout Leslie Lee's argument that he is at MMI. Leslie Lee attempts to parse those statements to show stabilization. These attempts fail.

I recognize that treating physicians have found Zimmerman's symptoms remain severe, that the severity sometimes fluctuates, and that various doctors have described Zimmerman's headaches as "chronic" or "ongoing." *See* Decl of Oberg, Ex. 20, p. 2, ECF No. 58-20 (Dr. Bice

8 – OPINION AND ORDER

noting in early 2013 that Zimmerman's headaches continue on a daily basis); *Id.* Ex. 21, p. 2, ECF No. 58-21 (Dr. Svoboda noting in late 2013 that Zimmerman's condition is intermittently severe and continuing); *Id.* Ex. 31, p. 3, ECF No. 58-31 (Dr. Steinke noting in 2014 that Zimmerman's "headaches are unchanged"); *Id.* Ex. 45, p. 2, ECF No 58-45 (Dr. Estevez noting in 2015 that Zimmerman "continued to have the headache he has had for the last 3 and half years since the accident"). These excerpts from treating physician's opinions do not eliminate a question of material fact as to whether Zimmerman has obtained MMI. Two of Zimmerman's current treating doctors, including one of the doctors Leslie Lee quotes to support its MMI argument, believe MMI has not been reached as of September 2015 and express optimism as to Zimmerman's continuing improvement. Dr. Estevez opines: "With continued treatment, I believe Michael can get closer to his pre-accident levels of physical and cognitive function." Decl. of Dr. Estevez, ¶ 6, ECF No. 66. Dr. Lin states that, on a more probable than not basis, Zimmerman is "not medically stationary" and "further treatment can improve [his] medical condition." Decl. of Dr. Lin, ¶ 5, ECF No. 67. I recognize that Leslie Lee's retained medical expert, Dr. Murphy, provides an opinion to the alternative. I find that unpersuasive for the purposes of this motion because (1) "a given treating physician has a greater opportunity to know and observe the patient" than a physician retained by opposing counsel, *Ayers v. Life Ins. Co of N.A.*, 869 F. Supp. 2d 1248, 1264 (D. Or. 2012); and (2) I must resolve ambiguities of MMI created by conflicting medical opinions in Zimmerman's favor, per *Sefcik*. 490 F. Supp. at 1374.

For these reasons, Leslie Lee's motion fails at is applies to Zimmerman's attainment of MMI.

### III. Evidentiary Objections to Medical Opinions

In an attempt to remove the opinions of Drs. Lin and Estevez from consideration, and to ostensibly eliminate any ambiguities as to MMI, Leslie Lee objects to those doctors' declarations under Fed. R. Evid. 702. *See* Def.'s Reply, 1, ECF No. 69. Leslie Lee moves the court to strike these declarations as inadmissible. *Id.* at 2.

Leslie Lee argues that Zimmerman "has the burden to establish that the admissibility requirements of any expert are met by a preponderance of the evidence" and that he has failed to do so. *Id.* (citing *Hall v. Baxter Healthcare Corp.*, 947 F. Supp. 1387, 1395 (D. Or. 1996)). Leslie Lee further relies on *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993), which sets the bar for determining reliability of scientific testimony introduced through an expert for the purposes of establishing causation. Leslie Lee argues that Zimmerman's doctors are somehow straying from the ambit of their professional medical knowledge by diagnosing Zimmerman with a traumatic brain injury and post-concussive syndrome. *See* Def.'s Reply, 3–4, ECF No. 69. This argument fails. Zimmerman's doctors offer opinions formed during treatment about the current status of their patient, not expert scientific testimony as to the causation of Zimmerman's medical symptoms. The opinions of Drs. Bice, Lin, and Estevez as to Zimmerman's medical status, potential for improvement under their care, and diagnoses of post-concussive syndrome do not attempt to establish causation and, for the purposes of the instant motion, need not be subject to a *Daubert* analysis. *See Dunlap v. Turner*, 2005 WL 6007047, at *5 (D. Mont. Dec. 8, 2005) (explaining that the Federal Rules of Evidence and *Daubert* are not intended to provide an excuse for the automatic challenge to the testimony of every expert, but to provide vigorous cross examination and presentation of contrary evidence to attack shaky but admissible evidence, and concluding that a treating physician not testifying at trial is not yet

subject to *Daubert*). Should any of the doctors here attacked by Leslie Lee opt to provide expert testimony at trial, this motion may be renewed. Until such time, Leslie Lee's motion to strike the treating doctors' opinions of Zimmerman's current condition is denied.

## CONCLUSION

For the reasons stated above, Defendant's motion for partial summary judgment, ECF No. 53, is DENIED. Defendant's motion to strike, found in ECF No. 69, is DENIED.

IT IS SO ORDERED.

DATED this 4 day of December, 2015.

                                    **Michael J. McShane**
                                  **United States District Judge**